ESTATE OF ALMON E. HALL, DECEASED, NORMAN A. HALL, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hall v. Commissioner
Docket No. 2184-90
United States Tax Court
T.C. Memo 1992-56; 1992 Tax Ct. Memo LEXIS 61; 63 T.C.M. (CCH) 1951; T.C.M. (RIA) 92056; January 29, 1992, Filed *61 Decision will be entered under Rule 155. Richard C. Hannan, Jr., for petitioner. Powell W. Holly, Jr., Nancy M. Vinocur, and Bradford A. Johnson, for respondent. JACOBS, Judge. JACOBS
MEMORANDUM OPINION Respondent determined a deficiency of $ 134,423 [1] in petitioner's Federal estate tax. The deficiency was based primarily on respondent's disallowance of $ 271,440 of the $ 530,471 that petitioner claimed as a charitable deduction. The deduction was for an amount passing to a 5-year charitable lead trust established under the will of the decedent's wife, Amy E. Hall, as a result of the decedent's failure to exercise a testamentary power of appointment over property bequeathed to him in trust by his wife. To compute the amount of the allowable charitable deduction, we must determine whether the charitable lead trust ended 5 years after the decedent's death in 1986, as petitioner contends, or 5 years after Amy Hall's death in 1983, as respondent contends. All other issues have been resolved by the parties through mutual concessions. *62 Background
The parties submitted this case fully stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Almon E. Hall died on February 6, 1986. At the time of his death, he was a resident of Wallingford, Connecticut. His wife, Amy Hall, had died 2-1/2 years earlier on July 19, 1983. Amy Hall bequeathed Almon Hall a pecuniary legacy in trust (the spousal trust), in the event she died before him. [2] With respect to the spousal trust, Almon Hall was entitled to the entire trust income and so much of the trust principal as he requested. Article Fourth, paragraph B of Amy Hall's will provided that Almon Hall: shall have power in him and him alone and in all events by his Last Will and Testament duly admitted to probate which shall specifically refer to the power of appointment conferred upon him by this will to appoint the entire principal of this trust as constituted at his death free of this trust to his estate or to such person or persons in such shares proportions whether outright or in trust and upon such terms and conditions as he alone deems proper and so much of the principal thereof as shall not be effectively *63 so appointed shall be disposed of as follows: 1. There shall first be paid to the executor of my husband's will or to the administrator of his estate, as the case may be, all estate, inheritance, legacy, succession and other taxes, domestic or foreign, arising by reason of his death (with interest and penalty thereon, if any) to the extent that said taxes, interest and penalty are attributable to the inclusion in his estate, for purposes of said taxes, of this trust or any part thereof.
2. I appoint all the rest of said principal to the trustees to be held as a charitable lead trust under the same terms and conditions as set forth in Paragraph C of this Article Fourth.
In the event Almon Hall died before her, Amy Hall bequeathed that portion of her estate which would have been held in the spousal trust to the trustees of the charitable lead trust for a period of 5 years from the date of *64 her death and thereafter to her children. Pursuant to the provisions of article Fourth, paragraph C of Amy Hall's will, the trustees of the charitable lead trust: shall manage, invest and reinvest the same, shall collect the income therefrom and, after deducting from said income the expenses of administration properly chargeable thereto, for each year during the period ending on the fifth (5th) anniversary of my death (the first such year to commence on the date of my death) shall pay an amount equal to five per centum (5%) of the net fair market value of the property of said trust (to be determined annually) to such one or more qualifying organizations as my Trustees shall from time to time designate and in such amounts or proportions as they shall in their discretion determine. Any net income not needed for said purpose shall be accumulated and added to principal. At the end of said period my Trustees shall add to the then remaining principal of this trust all undistributed and all accrued income and shall distribute said principal to my then living issue, equally per stirpes.
Almon Hall died without withdrawing from the principal of the spousal trust and without *65 exercising his testamentary power of appointment with respect to said principal. Discussion
Section 2001 [3] imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. Under section 2001(b), the amount of the tax is based on the amount of the taxable estate. The taxable estate is determined by deducting from the gross estate the deductions permitted under sections 2051 through 2056. Under section 2055(a)(2), an estate may deduct from the value of the gross estate the amounts transferred for the use of charitable organizations. The parties dispute the amount transferred (as a result of Almon Hall's failure to exercise his testamentary power of appointment under Amy Hall's will) for the use of charitable organizations under the charitable lead trust and, thus, the amount allowable as a deduction to his estate under section 2055(a)(2). The computational dispute concerns the term of the charitable lead trust. *66 Both parties agree that the charitable lead trust began on February 6, 1986, the date of Almon Hall's death. They disagree as to when the charitable lead trust ended. Respondent contends that the charitable lead trust ended on July 19, 1988, 5 years after Amy Hall's death. Therefore, respondent concludes that the term of the charitable lead trust was approximately 2-1/2 years and that the value of the charitable lead trust was $ 259,031. In contrast, petitioner contends that the charitable lead trust ended on February 6, 1991, 5 years after Almon Hall's death. Therefore, petitioner concludes that the term of the charitable lead trust was exactly 5 years and that the value of the charitable lead trust was $ 530,471. Amy Hall's will is to be interpreted under the laws of Connecticut, the State where she was last domiciled. . Under Connecticut law, we must determine Amy Hall's intent as expressed in her will. . Respondent argues, as an initial matter, that the provision concerning the charitable *67 lead trust (article Fourth, paragraph C of the will) is clear and unambiguous. He contends that the "measuring line for the charitable lead trust is * * * five years from the date of Amy Hall's death." We disagree. Article Fourth, paragraph B, subparagraph 2 of Amy Hall's will provides that so much of the principal of the spousal trust as was not withdrawn or appointed was to go to the charitable lead trust, under the same terms and conditions as set forth in article Fourth, paragraph C of Amy Hall's will. Pursuant to article Fourth, paragraph C, the trustees of the charitable lead trust were to pay to various charitable organizations 5 percent of the value of the property "for each year during the period ending on the fifth (5th) anniversary of my death (the first such year to commence on the date of my death)". The charitable lead trust could not begin both on the date of Almon Hall's death and on the date of Amy Hall's death, which was 2-1/2 years earlier. Thus, there is an apparent contradiction between article Fourth, paragraph B, subparagraph 2 and article Fourth, paragraph C of Amy Hall's will. This same contradiction appears in Almon Hall's will. If, as the parties *68 agree, the charitable lead trust began on the death of Almon Hall, then to avoid this contradiction, we must substitute a reference to Almon Hall in place of one of the references to Amy Hall in article Fourth, paragraph C of Amy Hall's will, as follows: My Trustees shall manage, invest and reinvest the same, shall collect the income therefrom and, after deducting from said income the expenses of administration properly chargeable thereto, for each year during the period ending on the fifth (5th) anniversary of my death (the first such year to commence on the date of * * * [Almon Hall's] death) shall pay an amount equal to five per centum (5%) of the net fair market value of the property of said trust (to be determined annually) to such one or more qualifying organizations as my Trustees shall from time to time designate and in such amounts or proportions as they shall in their discretion determine.
Because there is an ambiguity in Amy Hall's will, we must determine what Amy Hall intended when she provided that the charitable lead trust be established "under the same terms and conditions as set forth in Paragraph C of this Article Fourth." In construing such intent, we are *69 mindful that "Reason and common sense are not to be excluded from consideration in ascertaining the intent of a testatrix under these circumstances". . In our opinion, Amy Hall intended that, if Almon Hall died without having withdrawn all the principal from the spousal trust and without having exercised his testamentary power of appointment, then a charitable lead trust would be established and its term would be 5 years from the date of Almon Hall's death. Our opinion is based on the following two provisions in Amy Hall's will. First, Amy Hall expressly provided that the term of the charitable lead trust would be 5 years, in the event that she died after Almon Hall died. And, second, she expressly provided that the charitable lead trust would be established under the "same terms and conditions", in the event that Almon Hall died after she died. The reasonable and commonsense interpretation of these two provisions is that she (as well as Almon Hall) intended to benefit charitable organizations for a full 5 years, regardless of whether she or Almon Hall died first. Respondent offered no explanation as to what *70 Amy Hall intended. To the extent that Almon Hall died without having withdrawn all the principal from the spousal trust and without having exercised his power of appointment over it, then, under respondent's interpretation of Amy Hall's will, Amy Hall established a charitable lead trust whose term and, possibly, whose existence depended on the fortuity of how long Almon Hall would outlive Amy Hall. Under respondent's interpretation, if Almon Hall had survived Amy Hall by 1 month, then the charitable lead trust would have had a term of 4 years and 11 months. Similarly, if Almon Hall had survived Amy Hall by 4 years and 11 months, then the charitable lead trust would have had a term of 1 month. But if Almon Hall had survived Amy Hall by 5 or more years, then the charitable lead trust would never have come into existence. Respondent contends that Amy Hall's primary intent was to benefit Almon Hall. Respondent argues that Amy Hall's only concern toward charitable organizations, as expressed in her will, was that the charitable lead trust would end 5 years after her death. As respondent posits, because "the will expresses an intent in unambiguous terms, that intent may not be varied *71 simply because it appears to the court that the testator must actually have intended otherwise." . We agree that Amy Hall's primary intent was to benefit Almon Hall: Almon Hall had the right to so much of the principal of the spousal trust as he desired, and he had the testamentary power of appointment over the principal. However, we cannot agree with respondent that Amy Hall unambiguously expressed an intent regarding when the charitable lead trust would end. As we have discussed, she ambiguously provided in her will that the charitable lead trust would begin at Almon Hall's death and at her death. Respondent argues that petitioner improperly seeks reformation of Amy Hall's will. Respondent draws an analogy between this case and . In Smuda, the decedent bequeathed his estate to his wife. He failed to provide for the contingency that his wife might die before he died. However, he did provide for the possibility that he and his wife might die simultaneously. Those persons who would become beneficiaries under such a possibility argued *72 that the decedent intended also to make them his beneficiaries in the event that his wife died before he did. They argued, therefore, that the court should reform the will by inserting the words "my wife should predecease me or" into the phrase "in the event that [my wife should predecease me or] our deaths occur simultaneously". The court in , refused to so reform the will, stating: Thus, where, as here, a contingency has arisen for which the testator made no provision, we are not justified in departing from the expressed intent. Our function is to determine the meaning of what the testator said and not to speculate as to what he meant to say. [Citations omitted.]
In addressing Smuda, we recognize as an initial matter that "precedents are generally inconclusive in will construction suits, at least unless they lay down general rules for the construction of wills, since in each will the language used by the testator, and the circumstances surrounding him, differ." . As distinguished from the decedent in Smuda, Amy Hall did not fail to provide *73 for the possibility that she might die before Almon Hall. Amy Hall's will provided that if Almon Hall did not withdraw or appoint the principal of the spousal trust, then the charitable lead trust would be established upon Almon Hall's death. To paraphrase the court in Smuda, we are not departing from Amy Hall's expressed intent to establish the charitable lead trust; we are merely determining the meaning of the ambiguous provisions. In conclusion, we hold that, under Amy Hall's will, the charitable lead trust ended on February 6, 1991, 5 years after Almon Hall's death. Accordingly, the amount of petitioner's charitable deduction is $ 530,471, as claimed on petitioner's Federal estate tax return. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All dollar amounts are rounded to the nearest dollar.↩
2. Almon and Amy Hall executed similar wills on March 15, 1982. At that time, Almon Hall was more than 96 years old.↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the date of Almon Hall's death. All Rule references are to the Tax Court Rules of Practice and Procedure.↩